UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL FERNANDES,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>NATIONSTAR MORTGAGE LLC,<br><br>　　　　　　Defendant. | No. 2:24-cv-01946-DAD-JDP<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION<br><br>(Doc. No. 14) |

On July 16, 2024, plaintiff Paul Fernandes filed this action against defendant Nationstar Mortgage LLC, d/b/a Mr. Cooper. (Doc. No. 1.) Plaintiff's first operative complaint ("FAC") asserts various claims for relief arising from defendant's conduct concerning the mortgage loan secured by plaintiff's property. (Doc. No. 13.) On July 19, 2024, the court granted plaintiff's *ex parte* application for a temporary restraining order ("TRO") preventing defendant from conducting a scheduled trustee's sale on plaintiff's property on July 22, 2024. (Doc. No. 11.)

This matter came before the court again on October 1, 2024 for a hearing on plaintiff's September 4, 2024 motion for a preliminary injunction seeking to enjoin defendant from proceeding with a trustee sale of plaintiff's property scheduled for October 16, 2024. (Doc. No. 14.) Attorney Brooke W. Brewer appeared by video for plaintiff. Attorney Melissa Robbins Coutts appeared by video on behalf of defendant. For the reasons explained below, the court will deny plaintiff's motion for a preliminary injunction.

1

## BACKGROUND[1]

Plaintiff resides at and owns the property located at 3136 Sceptre Drive, Rocklin, California ("the property"), which he purchased via grant deed on or about April 6, 2004. (Doc. No. 13 at ¶¶ 13, 14.) Plaintiff concurrently executed a $360,000 loan with Bank of America.[2] (*Id.* at ¶ 14.) At some point, defendant Nationstar became the servicer of plaintiff's loan. (*Id.* at ¶ 15.) On or about August 13, 2018, a notice of default was recorded on the property for an amount of $204,787. (*Id.* at ¶ 16.)

On or about January 1, 2016, plaintiff had filed a filed a voluntary petition for chapter 13 bankruptcy in the United States Bankruptcy Court for the Eastern District of California. (*Id.* at ¶ 17.) On or about March 3, 2020, that bankruptcy was dismissed. (*Id.* at ¶ 18.)

On or about November 11, 2021, plaintiff filed a voluntary petition for chapter 13 bankruptcy in the United States Bankruptcy Court for the Eastern District of California. (*Id.* at ¶ 19.) On or about July 21, 2023, that bankruptcy was dismissed. (*Id.* at ¶ 20.)

On or about September 9, 2023, plaintiff filed a filed a voluntary petition for chapter 13 bankruptcy in the United States Bankruptcy Court for the Eastern District of California. (*Id.* at ¶ 21.) On or about May 23, 2024, that bankruptcy was dismissed. (*Id.* at ¶ 22.)

On or about June 21, 2024, a Notice of Trustee's Sale was recorded on plaintiff's property. (*Id.* at ¶ 23.) Plaintiff then submitted a loan modification application to defendant in late June 2024. (*Id.* at ¶ 24.) On July 4, 2024, plaintiff received a letter from defendant informing him that his application for a loan modification was deemed complete as of July 3, 2024 and was under review. (*Id.* at ¶ 25.)

In a letter dated July 12, 2024, defendant notified plaintiff that his application for a loan modification had been denied. (*Id.* at ¶ 26.) The letter also indicated that plaintiff had 30 days from the date of the letter, or until August 12, 2024, to appeal that denial. (*Id.*)

---

[1] The following facts are drawn from the allegations of the first amended complaint ("FAC") and attached exhibits, as well as the declarations and exhibits filed in support of and in opposition to the pending motion. (Doc. Nos. 13, 14-2, 18-1.)

[2] Plaintiff has attached the corresponding Deed of Trust to his FAC. (Doc. No. 13 at 12–41.)

1       On or about August 9, 2024, plaintiff submitted his appeal to defendant. (*Id.* at ¶ 26.) Plaintiff declared that as of September 3, 2024, he had not heard back on the status of his appeal. (Doc. No. 14-2 at ¶ 17.) However, on August 20, 2024, defendant sent a letter in response to plaintiff by way of plaintiff's attorney in this action. (Doc. No. 18-1 at 51–53.) The letter addressed the denial of plaintiff's loan modification appeal and discussed defendant's calculations and conclusion that plaintiff was not eligible for a rate reduction or principal forbearance. (*Id.* at 51–52.) At the hearing on October 1, 2024, plaintiff's counsel conceded that their office did receive this letter.

         Earlier on June 17, 2024, defendant disbursed a check for payment of the insurance premium related to plaintiff's homeowner insurance policy. (Doc. No. 18-1 at 5.) Through inadvertent error, the check was made payable to "American Modern" rather than "American Family" insurance company. (*Id.*) In a letter dated August 7, 2024, plaintiff received a Notice of Cancellation from American Family Connect Property Insurance Company. (Doc. No. 13 at ¶ 28.) The notice stated that plaintiff's homeowner policy was canceled on June 27, 2024. (*Id.*) On August 8, 2024, defendant received a refund from American Modern, due to the incorrect insurance company receiving the payment. (Doc. No. 18-1 at ¶ 11.) Defendant's employees then confirmed that the policy had been cancelled effective June 27, 2024. (*Id.*) On August 20, 2024, defendant received a new American Family policy effective June 27, 2024, which is current and active through June 27, 2025. (*Id.* at ¶ 12.)

         Based on the foregoing, plaintiff brings the following four claims against defendant: (1) violations of the Homeowner Bill of Rights ("HBOR"), California Civil Code § 2923.6; (2) violations of the HBOR, California Civil Code § 2923.7; (3) breach of contract; and (4) violation of the Unfair Competition Law ("UCL"), California Business and Professions Code § 17200 et seq. (Doc. No. 1 at ¶¶ 29–50.) Plaintiff alleges that this court has diversity jurisdiction because the amount in controversy exceeds $75,000 and is between citizens of different states, since plaintiff is a citizen of California and defendant is a citizen of Texas. (Doc. No. 13 at ¶ 7.)

/////

1    Plaintiff's prayer for relief seeks:  that judgment is entered in plaintiff's favor and against
2    defendant; damages, disgorgement, and injunctive relief; compensatory damages, attorneys' fees,
3    and costs; and declaratory relief.  (*Id*. at 10.)
4    As stated above, plaintiff filed the pending motion for preliminary injunction on
5    September 4, 2024.  (Doc. No. 14.)  On September 18, 2024, defendant filed an opposition, and
6    on September 25, 2024, plaintiff filed a reply thereto.  (Doc. Nos. 18, 19.)

**LEGAL STANDARD**

"The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'"  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011)) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.'") (quoting *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)).  "In the Ninth Circuit, a plaintiff may also obtain a preliminary injunction by showing 'serious questions go[ ] to the merits' of its claims and a balance of hardships that tips 'sharply' towards the plaintiff, so long as it makes a showing on the other two factors."  *A Woman's Friend Pregnancy Res. Clinic v. Becerra*, 901 F.3d 1166, 1167 (9th Cir. 2018) (citation omitted) (alterations in original).  The party seeking the injunction bears the burden of proof as to each of these elements.  *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief.").  Finally, an injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter*, 555 U.S. at 22.

The likelihood of success on the merits is the most important *Winter* factor.  *See Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).  Plaintiff bears the burden of

demonstrating that he is likely to succeed on the merits of his claims or, at the very least, that "serious questions going to the merits were raised." *All. for Wild Rockies*, 632 F.3d at 1131.

## ANALYSIS

**A.      Likelihood of Success on the Merits**

The court will first analyze plaintiff's likelihood of success on the merits as to each of his four claims and then will turn to the other *Winter* factors.

       1.      Violation of the HBOR, California Civil Code § 2923.6

Plaintiff alleges a violation of California Civil Code § 2923.6, which prohibits "dual tracking," whereby a lender proceeds with the foreclosure process while reviewing a loan modification application. *See* Cal. Civil Code § 2923.6(c). "Dual tracking has been heavily criticized by both state and federal legislators." *Bermudez v. Caliber Home Loans, Inc*., No. 2:16-cv-01570-MCE-KJN, 2016 WL 3854431, at *2 (E.D. Cal. July 14, 2016). In July 2012, California passed the HBOR legislation to prohibit such practices and offer homeowners greater protection during the foreclosure process. *Id*. The statute provides that:

> If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer at least five business days before a scheduled foreclosure sale, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending. A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs:
>
> (1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired.
>
> (2) The borrower does not accept an offered first lien loan modification within 14 days of the offer.
>
> (3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification.

Cal. Civil Code § 2923.6(c). Section 2923.6(d) further provides that "[i]f the borrower's application for a first lien loan modification is denied, the borrower shall have at least 30 days from the date of the written denial to appeal the denial and to provide evidence that the mortgage

5

servicer's determination was in error." *Id*. § 2923.6(d). "Section 2923.6(c)–(d) thus 'prohibits recording a notice of default or sale and conducting that sale' while a loan modification application is pending." *Mcbride v. PHH Mortg. Corp*., No. 2:23-cv-02242-WBS-DB, 2024 WL 557791, at *1 (E.D. Cal. Feb. 12, 2024) (quoting *Marquez v. U.S. Bank, N.A.*, No. 15-cv-06658-JAK-E, 2016 WL 2885857, at *7 (C.D. Cal. May 16, 2016)); *see also Shupe v. Nationstar Mortg. LLC*, 231 F. Supp. 3d 597, 602 (E.D. Cal. 2017) ("Part of HBOR, California Civil Code § 2923.6 places restrictions on the recording of Notices of Default or Notices of Trustee's Sale while a loan modification application is pending.").

Here, plaintiff argues that he is likely to succeed on his claim under this statute because he is still "within his appeal period for his loan modification application denial." (Doc. No. 14-1 at 1.) In his declaration plaintiff states that he submitted an appeal of his loan modification denial on August 9, 2024 and has not heard back on the status of his appeal. (Doc. No. 14-2 at ¶ 17.) In opposition, defendant argues that plaintiff's appeal was denied on August 20, 2024, two weeks before plaintiff filed his pending motion for preliminary injunction. (Doc. No. 18 at 5.) In support of this assertion, defendant attaches as an exhibit the letter it sent to plaintiff by way of his attorney acknowledging plaintiff's appeal and discussing defendant's calculations and conclusion that plaintiff was not eligible for a rate reduction or principal forbearance. (Doc. No. 18-1 at 51–53.) In his reply, plaintiff does not acknowledge the receipt of this letter by his counsel. (Doc. No. 19.) In fact, he does not assert any further argument about California Civil Code § 2923.6 and appears to have abandoned this claim altogether. (*Id*.)

In light of the evidence submitted by defendant and plaintiff's counsel's admission at the hearing that their offices received the letter denying plaintiff's appeal, the court concludes that plaintiff has not demonstrated that his appeal period has not expired and thus has not shown any likelihood of success on the merits as to this claim. *See McKinney v. Wells Fargo Bank, N.A.*, No. 2:17-cv-02564-TLN-DB, 2019 WL 2725343, at *4 (E.D. Cal. July 1, 2019) (finding that the plaintiff was not likely to succeed on the merits and had not raised serious questions going to the merits of her HBOR claims where her loan modification application and her subsequent appeal were both denied in writing).

6

2.  Violation of the HBOR, California Civil Code § 2923.7

Plaintiff also alleges that defendant violated California Civil Code § 2923.7 by "failing to provide plaintiff with a single point of contact who could fulfill all their statutory duties." (Doc. No. 14-1 at 7.) The statute provides that:

> (a) When a borrower requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact.
>
> (b) The single point of contact shall be responsible for doing all of the following:
>
>   (1) Communicating the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options.
>
>   (2) Coordinating receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application.
>
>   (3) Having access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative.
>
>   (4) Ensuring that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any.
>
>   (5) Having access to individuals with the ability and authority to stop foreclosure proceedings when necessary.

Cal. Civ. Code § 2923.7(a)–(b). In his motion for a preliminary injunction, plaintiff argues that defendant failed to promptly establish a single point of contact ("SPOC") and that plaintiff has never been able to contact anyone to answer his questions regarding his loan modification application and that his requests for more information have been ignored. (Doc. No. 14-1 at 7.) In opposition, defendant submits letters that it sent to plaintiff identifying the name and contact information of his assigned SPOC. (*See* Doc. No. 18-1 at 15, 23, 31, 39, 42–43, 48, 53.) Defendant notes that plaintiff's SPOC is even identified in one of the letters plaintiff submitted as an exhibit in support of the pending motion. (*See* Doc. No. 14-2 at 11.) Defendant further notes that in plaintiff's declaration, he does not declare that he was not provided a SPOC or that he

7

made any attempts at communication or contact that were ignored or received no reply. (Doc. No. 14-2 at 2–4.) In plaintiff's reply, plaintiff does not respond to any of defendant's argument or evidence, and instead advances a new argument that because defendant previously set a foreclosure date of July 22, 2024, which was during plaintiff's appeal window, defendant has fallen "short of its duties under Cal. Civ. Code § 2923.7." (Doc. No. 19 at 3.)

       The court finds that plaintiff has not established his likelihood of success on this claim. As mentioned above, defendant has provided ample evidence that it did establish a SPOC as required by § 2923.7(a), and plaintiff has provided no evidence that he made attempts at communication that were not responded to. While plaintiff has attached as exhibits in support of the pending motion two letters that defendant sent to him (Doc. No. 14-2 at 9–18), he did not attach any evidence of correspondence that he initiated that was ignored.[3]

       As to plaintiff's new argument advanced for the first time in his reply, plaintiff has presented no authority supporting that when defendant previously set a trustee's sale for July 22, 2024, during plaintiff's appeal window, this was a failure of plaintiff's SPOC's responsibilities. While the court did grant plaintiff's motion for a TRO and enjoin the sale to permit time for plaintiff's appeal to proceed, the court fails to see how the setting of that sale date constituted a violation of the SPOC's responsibilities under the statute, which include communicating the process and deadline for foreclosure prevention alternatives, coordinating receipt of all documents and notifying the borrower of missing documents, having access to current information to adequately inform the borrower of their status, ensuring that the borrower is considered for all foreclosure prevention alternatives offered by the mortgage servicer, and having access to individuals with the ability and authority to stop foreclosure proceedings when necessary. *See* Cal. Civ. Code § 2923.7(b)(1)–(5). Plaintiff does not even identify which of the five responsibilities his SPOC failed to uphold when defendant, according to plaintiff, "march[ed] towards foreclosure" while plaintiff was still within his appeal window. (Doc. No. 19

/////

---

[3] The court also notes that plaintiff's FAC does not even *allege* any specific instances in which plaintiff attempted to contact defendant but received no reply.

8

at 3.) Accordingly, the court finds that plaintiff has not established a likelihood of success on this claim as to any of his theories.

### 3. Breach of Contract

Next, plaintiff argues that he is likely to succeed on the merits of his breach of contract claim, in which he argues that defendant breached the Deed of Trust by inadvertently making payment to the incorrect insurance carrier. (Doc. No. 14-1 at 7–8.) The elements of a cause of action for breach of contract are: (i) existence of the contract, (ii) plaintiff's performance or excuse for nonperformance, (iii) defendant's breach, and (iv) resulting damages to the plaintiff. *Oasis West Realty, LLC v. Goldman*, 51 Cal. App. 4th 811, 821 (2011) (citing *Reichert v. General Ins. Co.*, 68 Cal. 2d 822, 830 (1968)).

Plaintiff argues that he was in a contractual relationship with defendant through the Deed of Trust, and that defendant breached Sections 3 and 5 of the Deed of Trust by failing to pay the insurance premiums on plaintiff's homeowner insurance. (Doc. No. 14-1 at 7–8.) The relevant sections of the Deed of Trust provide that "Borrower shall pay to Lender . . . a sum (the "Funds") to provide for payment of amounts due for: . . . (c) premiums for any and all insurance required by Lender" and if "Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense." (Doc. No. 13 at 15–17.)

In opposition, defendant argues that it did not fail to pay the insurance premium; it made an error regarding the name of the insurance company, and as soon as it learned of the error, defendant submitted a new payment and reinstated insurance coverage retroactively, meaning there have been no gaps in coverage. (Doc. No. 18 at 6–7.) Further, defendant observes that the language that plaintiff refers to in the Deed of Trust makes it plaintiff's contractual obligation to keep the property insured and to pay defendant the amounts necessary for insurance premiums, for defendant to then use to pay the insurance company directly. (Doc. No. 18 at 7; *see* Doc. No. 13 at 15–17 ("*Borrower* shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards . . . , earthquakes and floods . . . .") (emphasis added); ("Borrower shall pay to Lender . . . a sum [] to provide for the payments due for . . . premiums for any and all insurance required by Lender"); ("If Borrower fails to maintain any of

9

1  the coverages described above, Lender *may* obtain insurance coverage, at Lender's option and
2  Borrower's expense.")(emphasis added)).  Defendant also submitted a declaration in which one of
3  its employees states that plaintiff has not made any payments to defendant since 2018 (including
4  for insurance premiums); defendant has since exercised its option to advance funds to pay for
5  insurance premiums, but it has no contractual duty to do so.  (Doc. No. 18-1 at ¶ 5.)  Finally,
6  defendant argues that a successful claim for breach of contract requires proof of actual damages
7  caused by the defendant's breach.  (Doc. No. 18 at 8.)  Here, because defendant advanced funds
8  to obtain a new insurance policy effective the very date that plaintiff alleges his prior policy was
9  cancelled, there has been no lapse in coverage, and plaintiff has made no attempt to demonstrate
10 any damages.  (*Id*.)

11     Plaintiff offers no argument in reply regarding his breach of contract claim.

12     The court finds defendant's analysis to be sound.  Plaintiff has not presented any facts or
13 evidence supporting his claim of a breach of a contractual obligation by defendant and/or
14 resulting damages to plaintiff.  Accordingly, plaintiff has not carried his burden to demonstrate
15 any likelihood of success on the merits of his breach of contract claim.

16     4.     UCL Violation

17     California's UCL prohibits "any unlawful, unfair, or fraudulent business act or practice."
18 Cal. Bus. & Prof. Code § 17200.  Plaintiff argues that he is likely to succeed on the merits of his
19 UCL claim because "[d]efendant's conduct . . . constitutes unlawful, unfair, and/or fraudulent
20 business practices."  (Doc. No. 14-1 at 8.)  Defendant did not address plaintiff's UCL claim in its
21 opposition to the pending motion.

22     Under the fraudulent prong, a plaintiff must "state with particularity the circumstances
23 constituting fraud" in support of the claim.  *See Kearns v. Ford Motor Co*., 567 F.3d 1120, 1124
24 (9th Cir. 2009) (quoting Fed. R. Civ. P. 9(b)).  To pass the particularity requirements of Rule
25 9(b), the plaintiff "must identify the who, what, when, where, and how of the misconduct
26 charged, as well as what is false or misleading about the purportedly fraudulent statement, and
27 why it is false."  *Scott v. Bluegreen Vacations Corp.*, No. 1:18-cv-649-AWI-EPG, 2018 WL
28 6111664, at *5 (E.D. Cal. Nov. 21, 2018) (citing *Davidson v. Kimberly-Clark Corp.*, 889 F.3d

956, 964 (9th Cir. 2018)). Here, plaintiff vaguely alleges that defendant's conduct was fraudulent. (Doc. No. 13 at ¶ 64; 14-1 at 8.) Plaintiff has not stated a plausible claim under the fraudulent prong, let alone established any likelihood of success on such a claim.

Under the unfair prong, a plaintiff bringing a claim for an unfair business practice must state "with reasonable particularity" the facts supporting the claim. *Khoury v. Maly's of Cal, Inc.*, 14 Cal. App. 4th 612, 619 (1993). Whether conduct is unfair can be determined by application of a balancing test, whereby the court balances the impact of a business practice on its alleged victim against the "reasons, justifications, and motives of the alleged wrongdoer." *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.,* 72 Cal. App. 4th 861, 886 (1999). In conducting this balancing courts look for whether the harm to the consumer is outweighed by the utility of the defendant's practice. *Lozano*, 504 F.3d at 735–36. In plaintiff's FAC, he simply states that defendant engages in "unfair business practices." (Doc. No. 13 at ¶ 68.) In his pending motion for a preliminary injunction, plaintiff provides slightly more detail, contending that the unfair business practices concern "defendant's representatives' statements" and "[d]efendants' violations of the California Civil Code." (Doc. No. 14-1 at 9.) However, nowhere does plaintiff make any showing regarding the impact of the business practice at issue as compared to the reasons of the alleged wrongdoer in employing the practice, or any other showing that would support a UCL claim under the unfair prong. Accordingly, plaintiff has also failed to show his likelihood of success on his claim under this prong.

Under the unlawful prong, "by proscribing any unlawful business practice, [the UCL] borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech*, 20 Cal. 4th at 180 (citation and internal quotation marks omitted). To show that a business act or practice is unlawful, plaintiff must show "a violation of another law [a]s a predicate" for the claim. *Berryman v. Merit Prop. Mgmt., Inc*., 152 Cal. App. 4th 1544, 1554 (2007). Because the court concludes that plaintiff has not shown a likelihood of success on his HBOR claims or his breach of contract claim, he has similarly not shown any likelihood of prevailing on his UCL claim under the unlawful prong, for failure to properly allege a predicate law violation.

11

1  **B.     Remaining *Winter* Factors**

2       The court will briefly touch on the remaining *Winter* factors: that plaintiff is likely to

3  suffer irreparable harm in the absence of relief, that the balance of equities tips in his favor, and

4  that an injunction is in the public interest. *Stormans, Inc.*, 586 F.3d at 1127. However, the court

5  notes that "with no likelihood of success on the merits, the court does not need to [do so]."

6  *Ensign v. U.S. Bank Nat'l Ass'n*, No. 3:16-cv-01609-HZ, 2016 WL 6897785, at *3 (D. Or. Nov.

7  22, 2016); *see also Winter*, 555 U.S. at 20.

8       First, the court acknowledges that the loss of plaintiff's home can be serious or even

9  irreparable harm. *Cutlip v. Deutche Bank Nat'l Tr. Co. for Harborview Mortg. Loan Tr. Pass-*

10  *Through Certificates 2007-7*, No. 15-cv-01345-BLF, 2015 WL 1928257, at *4 (N.D. Cal. Mar.

11  27, 2015). However, "in the absence of a likelihood of success on the merits, loss of property

12  alone is not sufficient" to obtain the "extraordinary remedy" of injunctive relief. *Michener v.*

13  *Wells Fargo Home Mortgage*, No. 12-cv-02003-PJH, 2012 WL 3027538, at *4 (N.D. Cal. July

14  24, 2012).

15      To satisfy the next factor of the *Winter* test, the balance of hardships must tip sharply in

16  plaintiff's favor. *All. for Wild Rockies*, 632 F.3d at 1133. Here, plaintiff applied for a loan

17  modification which was denied, and defendant detailed the reasons for this denial in response to

18  plaintiff's appeal and provided evidence of plaintiff's nonpayment for several years, since 2018.

19  (Doc. No. 18-1.) As discussed above, plaintiff has failed to demonstrate any viable claim of

20  unlawful conduct by defendant. Accordingly, the court finds that plaintiff fails to demonstrate

21  that the balance of the hardships tips sharply towards him. *See Buchanan v. Gandhi*, No. C22-cv-

22  01482-PHX-SMB, 2023 WL 6148087, at *3 (D. Ariz. Sept. 20, 2023) (finding that the plaintiff

23  failed to satisfy this factor where the plaintiff ceased making loan payments in 2016 but did not

24  face a foreclosure sale and eviction until 2022).

25      Finally, "the public interest inquiry primarily addresses impact on non-parties rather than

26  parties, and takes into consideration the public consequences in employing the extraordinary

27  remedy of injunction." *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1202 (9th Cir. 2022)

28  (internal quotation marks and citation omitted). As noted in this court's order granting plaintiff's

TRO, "[t]he public has a strong interest in foreclosure sales being conducted according to the letter and the spirit of the law." *Mcbride*, 2024 WL 557791, at *2. However, courts will not find that injunctive relief is in the public interest when "it would shield debtors from the agreed-upon repercussions of a failure to repay debt." *Karam v. Specialized Loan Servicing LLC*, No. 22-cv-00029-TUC-RCC, 2022 WL 2439220, at *2 (D. Ariz. July 5, 2022). Here, the court finds that plaintiff has failed to show that allowing defendant to proceed with the trustee sale of plaintiff's property scheduled for October 16, 2024, would violate the letter and the spirit of the law, and thus he has not satisfied this factor either.

**CONCLUSION**

For the reasons explained above, plaintiff's motion for a preliminary injunction (Doc. No. 14) is denied.

IT IS SO ORDERED.

Dated: **October 6, 2024**

　　　　　　　　　　　　　　　　/s/ Dale A. Drozd
　　　　　　　　　　　　　　　　DALE A. DROZD
　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE